First case of the afternoon is Cox v. Washington Savings Bank, No. 516-0226. Counsel for the appellant, you may proceed. Thank you, Your Honor. May it please the Court. My name is Mike Meyer. It's my honor today to be representing the plaintiff appellant, Troy Aaron Cox, in this case against Washington Savings Bank. Your Honor, the only issue in this case is whether the trial court erred in granting summary judgment for the defendant based upon the applicability of the Credit Agreements Act. It's our position, of course, that that was error and that no part of the Credit Agreements Act applies to the portion of the transaction that's at issue. The portion of the transaction that is at issue is the election of the bank as a result of the complaint to use fire insurance proceeds from a fire loss in the plaintiff's business to rebuild the business rather than to apply that insurance money to pay down the mortgage debt that the plaintiff had with the defendant. So in order to highlight why we think that the Credit Agreements Act does not apply, I would deviate somewhat from my brief without waiving any of it by going through each of the three sections of the Credit Agreements Act that are applicable or may be applicable, in this case, at least the ones that were argued in this case in the briefs. Starting at the beginning, Section 1 of the Credit Agreements Act contains definitions. The pertinent definition is the definition of credit agreement. It's our position that under the definition as contained in Section 1 that the oral election commitment option exercised by the bank to use the proceeds to rebuild the business is not a credit agreement. There are three ways that a commitment or agreement can be a credit agreement. The first one is if it involves a loan of money, which this clearly did not, and I don't think there's any dispute about that. The second one is if the bank was extending credit in some way. It clearly was not in that regard, and I don't think there's any dispute about that. The third way is if the creditor, in this case the bank, forbears or delays the repayment of money. This is the one that becomes a little bit contentious. I think one needs to bear in mind that underlying this transaction is the fact that there was a series of documents executed, including notes, mortgages, security agreements, etc., that clearly did create credit agreement or agreements between the parties here. And secondly, that according to the language that I believe I cited on page 6 of my brief, the language comes from one of the mortgages, and there's similar language in other documents. If the bank elects to use the money to rebuild rather than apply to the debt, the language says that the bank will permit that money to be used for that purpose so long as the debtor remains current in his payment. And there's no evidence in the record that the debtor was not current in his payment. So the bank had the right and continued, presumably, to receive the payment due under that underlying credit agreement. And for that reason, we say there was no forbearance. The bank will argue that there was forbearance because they didn't exercise the option to pay down the debt, but that's a fallacious argument. In our brief, we have pointed out that the definition from Black's Law Dictionary for forbearance is to permit one to retain money after it has become due. That doesn't apply here. There was no money that was overdue. There was no forbearance in terms of permitting the customer to retain money after it became due. The underlying payments continued to be made, so there was no forbearance whatsoever. In fact, underlying the whole scenario is the fact that the money to be used to rebuild wasn't the bank's money. It was the insurance company's money. So for those reasons, we say that Section 1 of the Credit Agreements Act, the very definition of a credit agreement, does not apply to that election where the bank says, We elect to use the fire insurance proceeds to rebuild the business. That is just simply not a credit agreement under any of the three ways that a credit agreement is defined. So, therefore, based upon that rather simple exercise in statutory construction, the election by the bank has re-elected the money. It's not a credit agreement. And that could be the end of the story, except that the bank has argued a few other sections of the Credit Agreements Act, and they've argued Section 2. Section 2 of the Credit Agreements Act, and I'm going to quote part of that just so it's firmly in my mind, at least. Section 2 says, in part, credit agreements to be in writing. Now, initially, we see that Section 2 is simply the statute of frauds portion of the Credit Agreements Act saying that credit agreements have to be in writing. And initially, we see also that since under Section 1, the election by the bank to use the proceeds to rebuild is not a credit agreement, then Section 2 doesn't apply at all. So we go further. It says, a debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing. My client's action was based upon the election to use the money to rebuild the premises. The bank is going to argue that somehow the underlying credit agreement involving the mortgages, the notes, and that kind of thing are implicated by this, but that doesn't make any sense. This Section 2 is talking about the alleged credit agreement, which allegedly derives from the promise or the undertaking to use the money to rebuild. That's what Section 2 is talking about. First, you have to have a credit agreement under Section 1, which we don't. And if you do, then you go to Section 2, and it says it has to be in writing. Section 2 doesn't apply because there's no credit agreement. Now, conversely, if the bank is correct and the credit agreement that's being referenced in Section 2 of the Credit Agreements Act is the underlying credit agreement between the bank and the customer involving the mortgages, et cetera, your argument doesn't make any sense because that agreement or series of agreements was or were in writing. So Section 2 wouldn't have any application. So I say that Section 2 should be read so as to apply to that election. It's not a credit agreement in the first place, so Section 2 has no application whatsoever. And once again, this portion of the Credit Agreements Act starts out by saying, quote, a debtor may not maintain an action for or in any way related to a credit agreement. So we have to refer to what action we're talking about. If you look at the complaint in this case, there is nothing that alleges any kind of breach or wrongdoing by the bank involving the underlying credit agreement. The plaintiff's entire case is based upon this election. It's not based upon the underlying credit agreement. So again, Section 2 has no applicability. Then thirdly, the bank attempts to raise a portion of Section 3 of the Credit Agreements Act, and specifically that portion of it which states that an agreement is invalid, if it results in the bank or the creditor losing a remedy which it otherwise would have had. In this case, and I have once again, by using the ordinary meaning of words, rule of construction, looked in Black's Law Dictionary and found the definition of remedy or remedial. And what it means is that a remedy is something that either is used to enforce a right or something that's used to redress a wrong. We don't have either of these in this case. The bank lost no remedy. It still had a right to the payments from the underlying mortgage, and there was no wrong. There's no allegation that the customer was in breach in any way. So how the loss of remedy comes into play here escapes me. There was no remedy that was lost by the bank because of their election to permit this building to be rebuilt. So under any of the three sections of the Credit Agreements Act, the election by the bank or election by the bank, to use the insurance proceeds to rebuild was not a credit agreement under Section 1. Section 2 has no applicability, nor does Section 3. In their brief, the bank has made some other arguments, which I won't go into in great detail, except to say that they don't agree with our definition of forbear or forbearance, that they fail to set forth an alternative or any case that cites an alternative to what we posit to be the meaning of forbearance in Section 1 of the Act. And lastly, they have, in one portion, in fact, the first portion of the brief, pointed out in general terms that the Credit Agreements Act is to be applied broadly, but all the cases they cited are either clear cases of oral credit agreements, like an agreement to lend money, or cases which would be covered under a different part of Section 3 where there's a modification of an existing credit agreement. Nothing like that applies in this case. The election by the bank did nothing to modify the underlying credit agreement, so that portion of their argument must also fail. So for those reasons, we respectfully request that the order granting summary judgment as to Counts 1, 2, and 3 of the complaint be reversed and that this case be remanded for further proceeding. Thank you. Thank you, Counsel. Counsel for Appellee. May it please the Court? Counsel? I'm Arianna Calderaro, Counsel for the Appellee, Washington Savings Bank. There is one issue in this case that needs to be addressed, and that is whether the trial court's entry of summary judgment in favor of Washington Savings Bank was correct by finding an oral agreement to prepare the application of fire insurance proceeds to the balance of a loan is barred by the underlying credit agreement act. The trial court's entry of summary judgment was correct. There's no issue of material fact, and the oral agreement is barred by two sections of the Illinois Credit Agreement Act. The first section I'm going to discuss is Section 2, and that bars this oral agreement because it is an oral credit agreement or is related to a credit agreement. And then Section 3 I will discuss secondly, and that bars this oral agreement because it is a modification, and it's also a forbearance from exercising an existing right under a credit agreement. Now, Section 2 states a debtor may not maintain an action on or in any way related to a credit agreement unless the agreement is in writing. The definition of a credit agreement is an agreement or commitment by a creditor to lend money, extend credit, or to delay or forbear the repayment of money. In this case, Washington Savings Bank had an auction or an oral election based on a commercial security agreement and two mortgages. Within those documents, there was a provision that gave the bank the right to receive and retain the fire insurance proceeds and either apply that to the loan balance or to allow for the repair of the property for reimbursing the debtor for their repair expenses. The bank orally elected to allow the debtor to repair the property, and that oral election is a credit agreement because it is agreement to delay the full payment of the loan. Was the plaintiff, Cox, current in payments at that time? I believe so, yes. At the time of the oral agreement? Okay. Yes, I believe so. All right. But whether or not he was current doesn't really matter because the bank had the ability to immediately repay the balance of the loan, and because they chose not to immediately repay it, they continued to extend the credit to the debtor to allow payments later. But the bank had that right to immediately repay the balance of the loan. Well, let me pose a hypothetical to you. Let's suppose that this individual's business burned down, no fight with the insurance company, gets payment in full for what they're committed to pay, and he goes to another bank and he deposits the money, he makes sure he's current in the obligation to your bank, and he rebuilds his agreement, he rebuilds his business. Does that constitute a credit agreement? Or a modification of a credit agreement? I believe it would be a modification. How so? Because under the provisions of the commercial security agreement and the mortgage, the debtor was supposed to notify the bank when he receives those proceeds and turn those over to the bank. By turning them over to another bank, he's actually defaulting on the provisions and breach of contract with the bank by not turning those over. So you're basically saying the forbearance that the bank exercised, you've got a debtor who's current, the bank agrees, exercises forbearance saying, fine, keep current, rebuild the business, and three months later takes the proceeds of the fire agreement, the fire insurance, and applies it to the credit that's been extended in full. Do you think there might be some estoppel there somewhere? There are cases, and I believe one of them is machinery transfer versus Morton Community Bank. And in that case, it was actually argued that there was full performance under a oral contract. And unfortunately, with the way this statute is written, it is so broad, it still barred that action, even though there was full performance. It is broader than what the statute of frauds implies, and because of the way the statute is written, it applies broadly. And even though it has a harsh result, and even in that case it said it had a harsh result, it still barred this oral agreement. Now, the summary judgment also precluded a count on fraud. What's your position to the proposition that, excuse me, the debtor was current, the debtor made an oral agreement, whatever its enforceability, I know is at issue, and made it with the creditor, and then the debtor, in reliance on that, takes certain actions, and then the creditor basically absolves the agreement and takes the money. Do you think a cause of action has been stated on fraud? Because adding the idea that the debtor reasonably relied upon the representations and the actions for a period of time by the creditor and acted accordingly. Even if there was a claim for fraud, it is still barred by the Illinois Credit Agreement Act because it's related to or it's based upon an oral credit agreement. Then why don't you tell me under what circumstances could a creditor be sued under the credit agreement? What would cause liability on behalf of a creditor under the Credit Agreement Act and your interpretation of the Credit Agreement Act? If it was in writing and they violated it. Only if it's in writing? Yes. As far as the trial court's opinion, they based that on the first national bank in Staunton versus McBride Chevrolet. And they compared that to our case in the facts here. And in McBride, the bank promised to hold a check drawn on an account with insufficient funds. The appellate court held that the promise was a credit agreement because it was a promise to delay the return of a check, an action the bank was allowed to do under the policies of the bank, until it received the funds from the individual who had the checking account. Although it wasn't intended for that to be a credit agreement, it was a credit agreement because it was a promise to delay the return of the check. That's similar here because the bank has promised to delay the full payment of the loan and have a right to do so and have the authority to do so under the Commercial Security Agreement and the mortgage. Additionally, there's a second part of Section 2 that states that if the action is in any way related to a credit agreement, it's barred unless it's in writing. It's not necessary for the oral agreement to be a credit agreement if it's related to a credit agreement. And there's two cases that I've cited in my brief regarding this. The first one is Nordstrom v. Wakanda National Bank. And in that case, that was an oral agreement by the bank to provide fire insurance. There was a written contract that stated the bank may provide fire insurance, and the bank orally then promised to provide it later after signing the contracts. The appellate court held that the oral agreement was a modification of a written contract to provide insurance. And although the modification of the agreement to procure insurance was not itself a credit agreement, the requirement of insurance was an integral part of a credit agreement. So it does not matter that the oral modification wasn't to a credit agreement. If it's integral to a credit agreement, it is barred by Section 2 if it's not in writing. An additional case was Bank One v. Resetti. And that dealt with an oral agreement by a bank to watch a business like a hawk when the guarantor signed a guarantee. The trial court in that case held the guarantee was not a credit agreement, and therefore the oral modification of the guarantee was not barred by the Illinois Credit Agreement Act. However, the appellate court reversed that and said the guarantee could not be held in isolation from the rest of the loan transaction. Even if it wasn't a credit agreement on its own, it could not be considered independently from the other documents. All the documents were conditioned on each other. And if there was a default under one, there was a default usually under the other. So if an oral agreement is conditioned on or cannot be considered independently or in isolation from the other loan documents, it is part of a credit agreement or related to a credit agreement. I think these rules are easily applied to the facts here. The right to the election is written into a commercial security agreement and a mortgage. Both of those documents are undisputedly credit agreements. The terms on how the debtor is to be reimbursed for his expenses in repairing the property are written into the commercial security agreement and the mortgage. The bank couldn't just return the full amount to the debtor. The debtor would have to provide proof of what his expenses were, because the bank still had the option at the end to apply whatever the remaining balance was to the loan. So they couldn't just elect to do however they want. They still have to follow the terms within the commercial security agreement and the mortgage. And because the election is based on and conditioned on the terms of the commercial security agreement and the mortgage, and how that's applied, it is still related. This oral election by the bank or the oral agreement by the bank is related to a credit agreement. And because that wasn't in writing, it is still barred by Section 2. Now, counsel focuses on in his brief, but I believe he mentioned it during his argument, that these cases refer to oral modifications and that our case does not. I respectfully disagree that our case does not, and I'll address that in just a second. But I believe that's too narrow of a reading of these cases. In Nordstrom, it didn't matter if there was an oral modification of the credit agreement, because it orally modified the insurance contract. What mattered was that the buyer insurance was integral to the credit agreement. And in Bank 1, it didn't matter that the guarantee wasn't necessarily a credit agreement on its own, but what mattered was it couldn't be considered in isolation. You had to consider them together because they were conditioned on each other. So just because an agreement may not be the credit agreement itself, if it's integral to a credit agreement and it's conditioned on and it cannot be considered in isolation from a credit agreement, it's either part of a credit agreement as a whole or it's related to a credit agreement and would be barred by Section 2 if it's not in writing. Now, I talked about the oral election for being a modification. It is a modification of an existing credit agreement. If you compare the contract language from Nordstrom to the contract language in the commercial security agreement, it's very comparable. The written contract stated the bank may provide buyer insurance and then they orally agreed to provide that insurance, which then changed that language to the bank shall provide that insurance. In our case, the commercial security agreement states the lender may, at lender's election, receive and retain the proceeds of insurance or apply those proceeds to the loan or the restoration or repair of the property. By the bank orally stating that they would allow repair of the property, they are changing the language of the contract from the bank may to the bank shall allow the repair of the property and reimburse the debtor. So it changed the language there. And that leads us to Section 3 of the Illinois Credit Agreement Act, which bars modifications to existing credit agreements if they're not in writing. There's also one other portion, which we discussed in our brief, regarding the forbearing from exercising remedies in connection with an existing credit agreement. Opposing counsel focuses on the definition of forbearance as it relates to debt as permitting one to retain a loan of money after it becomes due and delinquent. In our brief, we address the fact that this is too narrow of an interpretation. They rely on a federal case. I think we refer to it as World War I. That was later held to be the definition of forbearance was too narrow and inconsistent with the admonition to construe the statute broadly in Westinghouse Electric Company v. McLean. We would propose the more general definition of forbearance, which Black Law Dictionary defines as an act of tolerating or abstaining or an act of refraining from enforcing the right, obligation, or debt. You really have to look at what the bank is doing here. The bank is choosing between two options, which is an election. If you look at the definition of an election in Black's Law Dictionary, it defines it as an act of choosing from several possible rights or remedies in a way that precludes the use of other rights or remedies. That's close to the second definition that I said about forbearance. If you are choosing one right, you are then refraining from exercising that other right. We urge the court to apply that broader definition of forbearance because an act of refraining from enforcement of a right, the bank refrained from exercising its right in the credit agreement because it refrained from applying the proceeds to the existing debt and paying it in full. Therefore, the oral agreement would again be barred by Section 3 of the Illinois Credit Agreement Act. In conclusion, we are asking the court to uphold the trial court's finding of summary judgment because the oral election by the bank was a credit agreement, and even if it wasn't a credit agreement, it related to a credit agreement because it was conditioned on and integral to an existing credit agreement. And Section 3 also bars it because it was an oral election that modified an existing credit agreement and an agreement to forbear exercising existing rights under a credit agreement. Therefore, we're asking the court to uphold the trial court's entry of summary judgment. Thank you. Thank you, counsel. Revato? Just a couple of things. I believe that all of the cases that counsel cited in support of her theory with regard to Section 2 specifically dealt with cases where the credit agreement was modified. Here we have a series of mortgages, security agreements, notes, and then we have the election by the bank to use the proceeds to rebuild. There is nothing about that factual scenario that in any way, shape, or form modified the underlying credit agreement. In fact, it's part of the underlying credit agreement that they have that election to make. Secondly, with regard to Section 2, I would emphasize that Section 2 says that an action may not be based upon an oral credit agreement. The action in this case was brought solely upon the formal election or promise to use the proceeds to rebuild. It was not based upon anything having to do with the underlying credit agreement. It is based on these words. We, as the bank, agreed to use the fire insurance proceeds to rebuild the premise. That has nothing to do with any kind of modification of the underlying credit agreement, so Section 2 doesn't apply for that reason, among the other reasons I mentioned that there wasn't a credit agreement in the first place. Unless the Court has questions, I'm finished. Thank you, Counsel. Thank you. The Court will take this matter under advisement and issue a decision in due course.